Railroad v. Ridley.

MOBILE & OHIO RAILROAD COMPANY *v.* MARY RIDLEY.

114   727
116   209

*(Jackson.   April Term, 1905.)*

1. **DEMURRER.** Not acted on in lower court cannot be assigned as error in supreme court.

An assignment of error in the supreme court that the lower court improperly overruled a demurrer to the declaration cannot be sustained, when it does not appear from the record that the demurrer was ever called up or acted upon in the lower court. (*Post, p.* 729.)

2. **PERSONAL INJURIES.** In an attempt to save human life imperiled by great danger in a sudden emergency.

It is not only lawful, but a laudable act, to attempt to save human life when it is imperiled by great danger, and in a sudden emergency, and in such cases the courts will not require the intending rescuer to stop, and hesitate, and weigh probabilities until it is too late to make the rescue, but it is sufficient if he acts with such care as a reasonably prudent and careful person would use in such emergencies, and under similar environments. (*Post, pp.* 729-738, and especially *p.* 738.)

3. **SAME.** Same. Rescuer of human life in imminent danger in a sudden emergency is not guilty of such contributory negligence as would bar an action for his wrongful death, when.

Where a person, acting in a sudden emergency and using such care as a reasonably prudent and careful person would use in such emergencies and under similar environments, loses his life in the attempt to save the life of another in imminent danger from the wrongful, careless, and negligent act or conduct of the defendant, he is not guilty of such contributory negligence as will bar a recovery for his wrongful death.

Cases cited and approved: Light & Power Co. v. Hodges, 109 Tenn., 331; Pennsylvania Co. v. Roney, 89 Ind., 453; Linehan v.

Railroad v. Ridley.

Sampson, 126 Mass., 506; Eckert v. Railroad, 43 N. Y., 503; Gibney v. State, 137 N. Y., 6; Pennsylvania Co. v. Langendorf, 48 Ohio St., 316; Spooner v. Railroad, 115 N. Y., 34; Donahoe v. Railroad, 83 Mo., 560.

4. **SAME. Same. Same. Recovery for wrongful death of a railroad employee caused in rescuing a boy in imminent danger from a rapidly approaching train; case in judgment.**

Where a railroad employee, on observing a small boy about eight years old standing on the railroad track with his back to a rapidly approaching train which had failed to give the statutory signals, rushed on the track and either pushed the boy, or so attracted his attention and alarmed him, that he ran off the track so that his life was saved, but slipped or stumbled himself, and in consequence of which he was struck by the engine and killed, a finding by the jury that such employee acted with due care under the circumstances was justified.

---

FROM OBION.

---

Appeal from the Circuit Court of Obion County.— R. E. MAIDEN, Judge.

SWIGGART & SPRADLIN, for Railroad.

MOORE & COCHRAN and LANNON & STANFIELD, for Ridley.

---

MR. JUSTICE WILKES delivered the opinion of the Court.

This is an action for damages resulting in the death of Bill Ridley, colored. It was brought by his widow. There was a trial before a jury, which resulted in a verdict and judgment for $1,000, and the railroad company has appealed, and has assigned quite a number of errors.

There was a demurrer filed to the declaration, stating as a ground that it failed to aver that the deceased at the time of the injury was exercising due caution and care, or to make any statement of facts rendering it unnecessary to make such averment.

In the brief of counsel for the railroad, it is said that this demurrer was overruled, and that the defendant excepted to the action of the court, and we are referred to page 4 of the record to verify this statement.

We do not find such recital on page 4 of the transcript, nor elsewhere; and, on examination of the record, we do not find that the demurrer was ever called up or acted upon. We assume, therefore, that counsel made this statement in his brief inadvertently, or that the record, as it comes to us, is defective and incomplete.

The first assignment of error, being that the court improperly overruled the demurrer, is therefore bad.

The facts, so far as necessary to be stated, are that the deceased, with another laborer, was working upon the track of the railroad company in the yards at Union City. Three or four boys, about eight years old, on their way to school, stopped to watch these laborers at their work. One of the boys, named Harry Cloys, was standing upon the track when a freight train came from the

north, running quite rapidly—some eighteen to twenty-five miles an hour. When it approached the place where these men were at work, they stepped off from the track, one upon one side, and the other upon the other. The little boy, Harry Cloys, was standing upon the track, with his back towards the approaching train, watching the men, and unaware of the approach of the train.

There is some question as to whether the whistle was blown a mile from the corporate limits, as the statute requires, but the weight of the proof is that the bell was not thereafter rung or the whistle blown before the happening of the accident.

The deceased had quit work, and had stepped aside for the train to pass, and was himself in a place of safety; but he saw the peril of the boy, and, acting upon the impulse of the moment, rushed upon the track to rescue him and to save his life. He either pushed him off the track, or so attracted his attention and alarmed him that the boy ran off the track; but the deceased, in rushing upon the track, slipped and partially fell, and was struck by the engine, and killed.

It is said in the fifteenth assignment of errors that while the railroad company might be required to show an observance of the statutory precautions, so far as the boy was concerned, and might be liable for any injury to him in case of its failure to observe such precautions, yet it owed no such duty to the deceased, who was an employee of the road, and went upon the track in the immediate front of the approching train.

The court virtually charged this, in substance, and made the liability of the company depend upon the action of the deceased in going upon the track at the time, in the manner, and for the purpose that he did.

It is assigned as error that there is no evidence to support the verdict, and that the facts made out by the plaintiff, which we have very briefly stated, do not furnish any grounds for a recovery.

This is based upon the theory that the deceased, in going upon the track immediately in front of the moving train, was guilty of such contributory negligence as must bar his recovery, even though his object and purpose was to save the life of a boy who was in imminent danger of being run over and killed.

The theory upon which plaintiff seeks to recover is that this boy, eight years old, had been put in a position of imminent peril and danger by the negligence of the defendant road, and that the deceased, in order to save the boy's life, rushed upon the track in the manner and for the purpose stated.

There can be no dispute that the plaintiff's intestate did go upon the track immediately in front of the moving train, and for the laudable purpose of saving the boy's life, and that the boy was in imminent danger from the careless and negligent operation of the defendant's train, and that the deceased was killed while engaged in this effort to save life.

We think, also, that the weight of the evidence is that the deceased slipped or stumbled upon the track, and,

in consequence of this mishap, was caught by the train, when he would not otherwise have been struck.

So that the crucial question in the case is, was the deceased justifiable in going before a moving train for such a purpose, and was he guilty of such reckless and negligent conduct in attempting to make the rescue as must necessarily or probably result in his own death?

Upon this feature of the case the trial judge charged very fully; saying, among other things, in substance, that the jury must determine whether deceased was guilty of negligence in going upon the track as he did in order to save the life of the boy; and did he, in so doing, do anything or omit to do anything that a reasonably prudent, cautious man would not have done or omitted to do under the circumstances?

Again, that if a reasonably prudent man, under the circumstances, would have attempted the rescue of the boy, then the deceased was not guilty of such negligence in making the attempt as would bar his recovery; but if a reasonably prudent man, under the circumstances, would not have attempted to rescue, then plaintiff should not recover. However, under such circumstances, he added, the law would not exact of a man that measure of calm and deliberate judgment as in cases where no emergency existed, and especially where the emergency was produced by the wrong or fault of the defendant, and called for prompt decision and quick action in order to be effective.

He told the jury to look to the situation of the boy—

Railroad v. Ridley.

whether he could probably have escaped himself, and, if not, whether deceased had reason to believe that he could rescue him without injury to himself— and, if an attempt to rescue under such circumstances would involve a danger so obvious and glaring that a reasonably prudent man would not attempt it, then, if the deceased did attempt it, it would be such rashness as must bar any recovery.

He then charged fully the reverse of this proposition.

He charged this idea and theory, in different form and different language, repeatedly and very fully, and told the jury, among other things, that if the deceased's negligence was the proximate cause of the injury, or if it proximately contributed to the injury, he could not recover.

In the case of *Chattanooga Light & Power Co.* v. *Hodges,* 109 Tenn., 331, 70 S. W., 616, 60 L. R. A., 459, 97 Am. St. Rep., 844, this court, speaking through the chief justice, said:

"It seems to be well settled that, when a person is exposed to peril of life or limb through the negligence of another, the latter will be liable in damages for injuries received by a third party in a reasonable effort to rescue the one so imperiled." Citing *Pennsylvania* v. *Roney,* 89 Ind., 453, 46 Am. Rep., 173; *Linehan* v. *Sampson,* 126 Mass., 506, 30 Am. Rep., 692; *Eckert* v. *R. Co.,* 43 N. Y., 503, 3 Am. Rep., 721; *Gibney* v. *State,* 137 N. Y., 6, 33 N. E., 142, 19 L. R. A., 365, 33 Am. St. Rep., 690.

"But even in such a case the rescuer must not rashly

expose himself to danger." *Penn. Co.* v. *Langendorf,* 48. Ohio St., 316, 28 N. E., 172, 13 L. R. A., 190, 29 Am. St. Rep., 553.

In the case of *Eckert* v. *L. & N. R. Co.,* supra, the evidence showed that the train was approaching in plain view of the deceased, and that there was a small child upon the track, who must inevitably be crushed by the rapidly approaching train if not rescued. Under these circumstances, it was not wrongful in him to make every effort in his power to rescue the child, compatible with a reasonable regard for his own safety. It was his duty to exercise his judgment as to whether he could probably save the child without serious injury to himself. If, from appearances, he believed that he could, it was not negligence to make an attempt to do so, although he might believe that possibly he might fail and receive an injury himself. He had no time for deliberation. He must act instantly, if at all, as a moment's delay would have been fatal to the child. The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons. For a person engaged in his ordinary affairs or in the mere protection of property knowingly and voluntarily to place himself in a position where he is liable to receive a serious injury is negligence which will preclude a recovery for an injury so received; but when the exposure is for the purpose of saving life it is not wrongful, and therefore not negligence, unless such

Railroad v. Ridley.

as must be regarded as either rash or reckless." The jury were warranted in finding the deceased free from negligence under the rule as above stated.

In *Gibney* v. *State of New York,* 137 N. Y., 6, 33 N. E., 142, 19 L. R. A., 365, 33 Am. St. Rep., 690, a child walking with its parents fell through a defective bridge into the canal below. The father immediately plunged into the canal, and both father and son were drowned. It was contended by the State that, while the defective bridge may have been the cause of the boy's death, it could not be regarded as the cause of the death of the father, although his death occurred in an attempt to save the life of the child. The court held that the peril to which the child was exposed was the result of the negligence of the State, and that the peril to which the father exposed himself was the natural consequence of the situation. The court said: "We think it may justly be said that the death of both the child and parent was the consequence of the negligence of the State, and that the unsafe bridge was, in a legal and judicial sense, the cause of the drowning of both."

In the case of *Penn. Co.* v. *Langedoff,* 48 Ohio St., 316, 28 N. E., 172, 13 L. R. A., 190, 29 Am. St. Rep., 553, it is said: "To entitle one to relief for the consequences of the act of another, it is by no means necessary that the injured party should have been in the discharge of any duty whatever at the time. His rights, in this respect are perfect when he is in the performance of any lawful

act, and, in some States and in some instances, when the act is not strictly lawful."

It is further said in the case "that the act of the defendant in error was not only lawful, but in the highest degree commendable."

It was also said: "There was only a fraction of a minute in which to resolve and to act, or action would come too late. Under these circumstances, it would be unreasonable to require the exercise of judgment by one in a position to afford relief. To require one so situated to stop and weigh the dangers in attempting to rescue another, and compare them with those hanging over the person to be rescued, would be in fact to deny the rescue altogether, if the danger were imminent. The attending circumstances must be regarded—the alarm, the excitement, the confusion, usually present on such occasions. The uncertainty that the proper movement would be made, the promptness required, and the liability to mistake as to what is best to be done, suggest that much latitude of judgment should be allowed to those who are forced by the strongest dictates of humanity to decide and act in a sudden emergency. And the doctrine that one who under such circumstances springs to the rescue of another, thereby encountering great danger to himself, is guilty of negligence *per se*, is supported by neither principle nor authority; and at last the rule is, 'What would a reasonably prudent man have done under similar circumstances?' "

Railroad v. Ridley.

In the case of *Spooner* v. *R. R.*, 115 N. Y., 34, 21 N. E., 696, the *Eckert* case was approved, and it was held that a person who steps upon a railroad track in a humane effort to save a young child cannot be considered a trespasser.

The rule as stated in 7 Am. & Eng. Ency. Law, p. 394, is as follows:

"It is said that one who is injured by the negligence of another in attempting to save the life of one imperiled by his negligence is not himself guilty of contributory negligence; but the true rule in such cases is that contributory negligence is a question of fact for the jury, and, if it appears that the attempt was not so rash as to entail certain injury, a recovery will be sustained.

"And the defendant will be liable if the person saved is incapable of contributory negligence or was free from such negligence, provided there was negligence on the part of the defendant towards such person or towards the plaintiff."

In the case of *Donahoe* v. *Wabash R. Co.*, 83 Mo., 560, 53 Am. Rep., 594, the facts were that Mrs. Donahoe was struck and injured by a train while trying to save the life of her infant child, which had wandered upon a railroad track in front of an approaching train. It was held in that case, among other things, that the negligence of the company as to the child is imputed to the company with respect to the mother, who attempted to rescue it; but, if the company was not guilty of negligence as to the

child, then it would only be liable for negligence to the mother after her efforts to rescue the child had commenced.

We hold that it is not only a lawful, but a laudable act, to attempt to save human life when it is imperiled by great danger, and in a sudden emergency, and in such cases the courts will not require the person to stop and hesitate and weigh probabilities until it is too late to make the rescue; and the rule laid down by the trial judge is sufficiently strict—that the party attempting the rescue under such circumstances must use such care as a reasonably prudent and careful person would use in such emergencies and under similar environments.

In the present case the boy's life was in imminent danger—a danger brought about to a large extent by the negligent act of the railroad company, inasmuch as he was standing with his back to the approaching train, and could have been seen by any watchful lookout. No precautions were observed. The danger was imminent. Action must necessarily be prompt, or it would be too late, and the deceased was impelled with the commendable desire to save the boy's life.

Under these circumstances, he attempted to make the rescue; and, but for his slip or stumble, doubtless he would have been successful in preserving his own life as well as in rescuing the boy.

Under these circumstances, we think the jury was well warranted in rendering the verdict it did.

But for the action of the deceased, it appears manifest

Railroad v. Ridley.

that the boy would have been run over and killed by the train, and the railroad company would have been liable, in all probability, for a much larger judgment than was given in the present case.

Upon the whole record, we think the merits of the case have been reached, and there is no reversible error; and the judgment of the court below is affirmed, with costs.

There are other errors assigned, which will be disposed of in a memorandum, which need not be published.